

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00120-CR

**THE STATE OF TEXAS,**

                                                    **Appellant**

**v.**

**DENISE DEANE NELSON,**

                                                    **Appellee**

From the County Court at Law No. 2
Brazos County, Texas
Trial Court No. 13-02784-CRM-CCL2

## DISSENTING OPINION

I respectfully dissent to the majority's affirmance of the trial court's grant of

Nelson's motion to quash the amended information.

Each count in the amended information alleged that, on May 28, 2013, Nelson did

> knowingly solicit … a member of the public who has access to the world
> wide web, namely, a free access internet forum, specifically,
> www.backpage.com, to engage in sexual conduct, to-wit:  sexual contact;
> for hire.

The focus of Nelson's motion to quash was the amended information's use of the

words "sexual contact." Nelson contended that, under *Kass v. State,* 642 S.W.2d 463 (Tex. Crim. App. 1982) (op. on reh'g), the use of the words "sexual contact" did not give Nelson notice of what "sexual contact" she was alleged to have solicited. *See* TEX. PENAL CODE ANN. § 43.02(a)(2) (West 2015). And in its letter ruling that granted Nelson's motion to quash, the trial court discussed and relied on *Kass.*

In *State v. Barbernell,* the Court of Criminal Appeals detailed the fair-notice requirements for charging instruments under Texas law:

> The Texas and United States Constitutions grant a criminal defendant the right to fair notice of the specific charged offense. "The charging instrument must convey sufficient notice to allow the accused to prepare a defense." Toward that end, Chapter 21 of the Texas Code of Criminal Procedure governs charging instruments and provides legislative guidance concerning the requirements and adequacy of notice. With respect to informations, Article 21.21 sets out what facts must be included in an information and states, in part, "[t]hat the offense [must] be set forth in plain and intelligible words[.]" Additionally, an information must include everything that is necessary to be proved. An information is sufficient if it
>
> > charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment[.]
>
> We have recognized that in most cases a charging instrument that tracks the statutory text of an offense is sufficient to provide a defendant with adequate notice. When a statutory term or element is defined by statute, the charging instrument does not need to allege the definition of the term or element. Typically the definitions of terms and elements are regarded as evidentiary matters. But in some cases, a charging instrument that tracks the statutory language may be insufficient to provide a defendant with adequate notice. This is so when the statutory language fails to be completely descriptive. The statutory language is not completely descriptive "when the statutes define a term in such a way as to create several means of committing an offense, and the definition specifically

concerns an act or omission on the part of the defendant." In such cases, "more particularity is required to provide notice." Thus, "*if the prohibited conduct is statutorily defined to include more than one manner or means of commission, the State must, upon timely request, allege the particular manner or means it seeks to establish*."

257 S.W.3d 248, 250-51 (Tex. Crim. App. 2008) (emphasis added) (citations in footnotes

omitted). The court then reiterated the applicable two-step analysis:

> In analyzing whether a charging instrument provides adequate notice, our notice jurisprudence makes clear that courts must engage in a two-step analysis. First, a court must identify the elements of an offense. … [T]he elements, defined by the Legislature, include: *the forbidden conduct*, the required culpability, if any, any required result, and the negation of any exception to the offense. Next, as to the second inquiry, *when the Legislature has defined an element of the offense that describes an act or omission, a court must ask whether the definitions provide alternative manners or means in which the act or omission can be committed*. If this second inquiry is answered in the affirmative, a charging instrument will supply adequate notice only if, in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial.

*Id.* at 255 (emphases added) (citation in footnote omitted).

*Thomas v. State*, 621 S.W.2d 158, 161, 164 (Tex. Crim. App. 1981) (op. on reh'g) holds

that terms that are specifically defined in a statute and that do not go to an *act or omission*

of the defendant need not be more specifically pled in a charging instrument. Under

*Barbernell*, the elements of the offense and any statutory definitions are the beginning

point. At the time of the alleged offense, subsections 43.02(a)(2) and 43.02(b) provided:

(a) A person commits an offense if he knowingly:
   (1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; or
   (2) *solicits* another in a public place to engage with him in *sexual conduct* for hire.

(b)   …  An offense is established under Subsection (a)(2) whether the actor solicits a person to hire him or offers to hire the person solicited.

Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3681 (emphases added) (current version at TEX. PENAL CODE ANN. § 43.02(a)(2), (b)(2) (West 2015)).

"Sexual conduct" includes "*sexual contact*," which means "any touching of the *anus, breast, or any part of the genitals* of another person with intent to arouse or gratify the sexual desire of any person."  TEX. PENAL CODE ANN. § 43.01(a)(3, 4) (West 2015) (emphases added).

On October 20, 1982, the Court of Criminal Appeals issued its opinion in *Cardenas v. State,* 640 S.W.2d 291 (Tex. Crim. App. 1982) (en banc), an appeal from a prostitution conviction.  The issue was not notice, but whether the information was fundamentally defective with respect to the defendant's intent.  *Id.* at 292.  The information alleged that the defendant did "knowingly offer and agree to engage in sexual conduct, namely, sexual contact, with …."  *Id.*  To resolve the issue, the court focused on the "conduct element" in the case:  "Here, the act alleged was not sexual contact, but rather it was the offer or agreement to engage in such conduct.").  *Id.* at 293.  Therefore, the court held that the information was not fundamentally defective: "The intent that must accompany future sexual contact need not accompany the offer or agreement to engage in sexual conduct.  It therefore is not part of the conduct element in this case and need not be alleged in the information."  *Id.* at 292.  As discussed below, the focus in *Cardenas* on the conduct element of a prostitution charge alleging "offer to engage" is key.

One week later, the court issued its opinion on rehearing in *Kass*, an appeal from

a conviction for solicitation of prostitution. The defendant had moved to quash the information, which alleged that she had solicited a person to engage in "sexual conduct" for hire. The motion to quash asserted that the information did not give sufficient notice because of the numerous statutory meanings of the term "sexual conduct." *Kass,* 642 S.W.2d at 469. Instead of focusing on the forbidden conduct—the solicitation—the majority focused on "sexual conduct":

> The term "sexual conduct" is statutorily defined by Sec. 43.01(4), supra. The definition provides three different methods of such conduct. One of those methods, sexual contact, can in turn be committed in three different manners. Likewise, deviate sexual intercourse, can be committed in two different manners.
>
> The type of "sexual conduct" the State sought to prove in the instant case was critical to appellant's ability to present a defense. The solicitation to engage in some form of such "sexual conduct" was the essence of the offense with which appellant was charged. The statutory definition of "sexual conduct" provides a number of different manners by which appellant could have committed the offense of prostitution. Appellant's motion to quash entitled her to the allegation of facts sufficient to bar a subsequent prosecution for the same offense and sufficient to give her precise notice of the offense with which she was charged. We conclude the court erred in overruling appellant's motion to quash.

*Id.* at 469-70.

Judge McCormick began his dissent by noting that the majority was not following the rule announced in *Thomas*:

> The majority overlooks the fact that appellant was not charged with a consummated act of prostitution. The *act* alleged here and which is the gravamen of the offense is the solicitation. The term "solicit" was not challenged by appellant in her motion to quash. Additionally, the solicitation was to commit some act in the future. Since the sexual conduct was allegedly to be performed in the future, it is not part of the conduct element in this case and need not be further alleged. See and compare *Cardenas v. State,* 640 S.W.2d 291 (1982). Our holding in *Thomas* dictates that

the State's motion for rehearing be granted.

*Id.* at 470 (McCormick, J., dissenting).

After *Kass*, several cases have addressed complaints similar to that in Nelson's motion to quash. In *Lozano*, a case similar to Nelson's, the appellant, who had been convicted of prostitution by solicitation, had moved to quash the information, which had alleged that appellant did "in a public place knowingly solicit R. Nieto to engage with the Defendant in sexual conduct, namely sexual contact, for hire." *Lozano v. State,* 650 S.W.2d 137, 138 (Tex. App.—Houston [14th Dist.] 1983, no pet.). On appeal she complained about the trial court's denial of her motion to quash, asserting that the information was defective "because it fails to allege what type of sexual contact appellant allegedly offered." *Id.* After citing to the above rule in *Thomas*, the court held:

> In the instant case, the information charges that appellant did "knowingly solicit" to engage in sexual contact for hire. The act alleged in the information was not sexual contact; rather, it was solicitation to engage in such conduct. Thus, the term "sexual contact" does not go to an act or omission of appellant, and is not subject to a motion to quash for failure to specify which type of sexual contact appellant solicited.

*Id.*

Similarly, the appellant in *Dismore* complained on appeal that the information, which alleged that he did "[K]nowingly and unlawfully OFFER TO ENGAGE …, in sexual conduct, namely: DEVIATE SEXUAL INTERCOURSE in return for a fee," did not provide sufficient notice because it did not plead the specific act allegedly offered. *Dismore v. State,* 658 S.W.2d 684, 684 (Tex. App.—El Paso 1983, no pet.). The court responded: "The critical issue is whether the various physical acts which may be

characterized as deviate sexual intercourse under Section 43.01 are multiple statutory definitions or variant evidentiary matters arising under a single statutory definition. We conclude that the latter interpretation is correct." *Id.* at 684-85.

But in *Jackson*, an appeal from an "offer to engage" prostitution conviction, the Amarillo court relied on the *Kass* majority opinion in holding that the trial court erred in denying the motion to quash the information.[1] *Jackson v. State,* 743 S.W.2d 239, 240-41 (Tex. App.—Amarillo 1985, no pet.). As in *Dismore*, the information alleged that the appellant "knowingly offered to engage *in sexual conduct, to-wit: deviate sexual intercourse,* with …, for a fee." *Id.* at 239. The appellant argued that the information did "not give her fair notice because it does not allege the particular type of "deviate sexual intercourse" she allegedly offered to engage in," and the Amarillo court agreed that the State failed "to allege the manner of deviate sexual intercourse it sought to establish." *Id.* at 240-41.

*Laverne* is another "offer to engage" prostitution case similar to *Dismore* and *Jackson*; the information alleged that the defendant "offered 'to engage … in sexual conduct, namely: deviate sexual intercourse.'" *Laverne v. State,* 737 S.W.2d 379, 379 (Tex. App.—San Antonio 1987) (per curiam), *pet. granted per curiam,* 753 S.W.2d 404 (Tex. Crim. App. 1988) (remanding for harm analysis). Citing *Kass* and *Jackson* but acknowledging *Lozano* as contrary authority, in a per curiam opinion the San Antonio court held:

> Since an offer to engage in deviate sexual activity might include either oral or anal contact with the genitals of another person, defendant was entitled

---

[1] And like the *Kass* majority opinion, the Amarillo court did not apply the *Thomas* rule and identify the act or omission of the defendant. *See Jackson,* 743 S.W.2d at 240-42.

to quash the information for failure to specifically state which type of deviate sexual intercourse was offered. *Kass v. State,* 642 S.W.2d 463, 469-70 (Tex. Crim. App. 1981); *Jackson v. State,* No. 07-83-0297-CR (Tex. App.—Amarillo, January 10, 1985) pet. denied, (not yet published);[2] *Contra, Lozano v. State,* 650 S.W.2d 137, 138 (Tex. App.—Houston [14th Dist.] 1983, no pet.).

*Laverne,* 737 S.W.2d at 380. Justice Dial dissented as follows: "I dissent to the majority opinion for the reasons stated in *Lozano v. State*, 650 S.W.2d 137, 138 (Tex. App.—Houston [14th Dist.] 1983, no pet.) and *Dismore v. State,* 658 S.W.2d 684 (Tex. App.—El Paso 1983, no pet.)." *Laverne,* 737 S.W.2d at 380 (Dial, J., dissenting); *see also Plemons v. State,* No. 01-92-00095, 1993 WL 460118, at *2 (Tex. App.—Houston [1st Dist.] Nov. 10, 1993, pet. ref'd) (not designated for publication) ("The courts of appeals are divided on whether a charging instrument must state upon request the type of deviate sexual intercourse involved.") (citing *Dismore* and *Jackson*).

In *Barbernell*, a DWI case, the Court of Criminal Appeals addressed the trial court's quashing an information because the State failed to allege which definition of "intoxicated" that it intended to prove at trial. *Barbernell,* 257 S.W.3d at 249. Relying on *State v. Carter*, 810 S.W.2d 197 (Tex. Crim. App. 1991), which held that the State must allege which definition of intoxicated—"loss of faculties" or "per se" intoxication (i.e., alcohol concentration)—that the State intends to prove at trial, the defendant asserted that the information failed to give notice of the manner and means by which he committed the DWI offense. *Barbernell,* 257 S.W.3d at 249.

The State asserted that a person's state of intoxication is not an act or omission but

---

[2] The *Laverne* court's citation for *Jackson*'s subsequent history is incorrect; the Court of Criminal Appeals did not rule on a petition for discretionary review in *Jackson*.

rather is the defendant's condition and a circumstance that accompanies the defendant's *act* of operating a motor vehicle, while the defendant argued that the *Carter* decision was sound and controlling precedent. *Id.* at 254-55. In a unanimous opinion, the Court of Criminal Appeals set forth the notice law quoted above and then determined that its analysis in *Carter* was incorrect:

> The Court reached this conclusion based on its determination that the definitions of "intoxicated" permit the offense of DWI to be proven in two ways. Our reevaluation of this analysis exposes a serious defect in the Court's reasoning: After identifying the elements of DWI, the Court neglected to ask whether the definitions of "intoxicated" concern an act or omission so as to create more than one manner and means of committing an offense. Instead, without explanation, the Court decided that the two definitions of "intoxicated" each constitute separate acts or forbidden conduct. In doing so, the Court failed to reconcile this conclusion with its previous statement that the definitions of "intoxicated" involve only matters of proof. Then, expanding on its faulty determination, the *Carter* Court held that, because the two types of forbidden conduct involve "fundamentally different natures" and "different behaviors," a charging instrument must allege the definition of "intoxicated" that the State will seek to prove at trial.

*Id.* at 255-56.

The court then conducted an analysis under its precedent:

> With the understanding that "intoxicated" is an element of DWI and that Section 49.01(2) sets out two definitions for "intoxicated," we ask whether the definitions of "intoxicated" concern an act or omission and create two different manners and means of committing DWI. Our recent examination of the definitions of "intoxicated" in *Bagheri v. State* leads us to conclude that the answer to this question is "no." Echoing the sentiments of Professors Dix and Dawson, in *Bagheri*, we held that the definitions "set forth alternative means by which the State may prove intoxication, rather than alternate means of committing the offense." We then explained, "The conduct proscribed by the Penal Code is the act of driving while in a state of intoxication. That does not change whether the State uses the per se definition or the impairment definition to prove the offense." These statements make clear that the definitions of "intoxicated" are purely

evidentiary matters; therefore, they do not need to be alleged in a charging instrument to provide a defendant with sufficient notice. As a result, we overrule Carter's holding that the State must allege the definition of "intoxicated" that it intends to rely on at trial in the charging instrument to provide adequate notice.

*Id.* at 256 (emphasis added) (citations in footnotes omitted).

*Kass* causes a dilemma: We have to either follow the result in *Kass* or apply the correct and current analysis set out in *Barbernell*. We cannot do both. I believe that the majority errs in choosing to follow *Kass* and in not applying *Barbernell*'s analysis.

We should be applying the correct analysis in the much more recent and unanimous *Barbernell* decision, rather than follow *Kass*, which was a split decision that, like *Carter* (which *Barbernell* overruled), contains a flawed analysis as described in Judge McCormick's dissent. *See Kass,* 642 S.W.2d at 470 (McCormick, J., dissenting). Following *Kass* also requires the majority to ignore *Cardenas*.

Under the *Barbernell* analysis, I note that the legislature did not define the act of soliciting; it did define "sexual contact." Terms that are defined but do not identify the *act or omission* need not be charged with greater specificity; they are evidentiary matters. *See Barbernell,* 257 S.W.3d at 255-56. The gravamen of the charged offense—the act alleged—is soliciting, not the specific type of sexual contact being solicited. *Lozano,* 650 S.W.2d at 138; *see Cardenas,* 640 S.W.2d at 292-93 ("the act alleged was not sexual contact, but rather it was the offer or agreement to engage in such conduct"). "[T]he term "sexual contact" does not go to *an act or omission* of appellant, and is not subject to a motion to quash for failure to specify which type of sexual contact appellant solicited." *Lozano,* 650 S.W.2d at 138 (emphasis added); *see Dismore,* 658 S.W.2d at 684-85. The type of "sexual

contact" that was allegedly solicited is an evidentiary matter—alternative means by which the State may prove soliciting to engage in sexual contact for hire. *See Barbernell,* 257 S.W.3d at 256.[3]

I would therefore conclude that the trial court erred in granting Nelson's motion to quash the amended information and would sustain the State's issue, reverse the trial court's order granting the motion to quash, and remand this case.


REX D. DAVIS
Justice

Opinion delivered and filed April 21, 2016
Publish



---

[3] Also, the amended information does not present a double-jeopardy problem; each count alleges one offense of soliciting for the respective "customer;" a separate offense does not exist for each of the definitions of sexual contact. *See Huffman v. State,* 267 S.W.3d 902, 905-09 (Tex. Crim. App. 2008); *Dismore,* 658 S.W.2d at 685.